IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: LARRY WAYNE. WILSON, JR. | ) ) | |
| Debtor | ) | CASE NO.  05-71657 |
| | ) ) | CHAPTER 13 |

| | | |
|---|---|---|
| JOHN H. KENNETT, JR., | ) | |
| SUBSTITUTE TRUSTEE | ) | |
| Movant, | ) ) | |
| v. | ) ) | MOTION FOR RELIEF |
| LARRY W. WILSON, JR., and | ) | |
| REBECCA CONNELLY, | ) | |
| CHAPTER 13 TRUSTEE, | ) | |
| Respondents. | ) | |

| | | |
|---|---|---|
| LARRY W. WILSON, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) ) | ADVERSARY PROCEEDING NO. 05-07060 |
| | ) | |
| WILLIAM A. WHITE, | ) | |
| WHITE HOMES & LAND, LLC, and | ) | |
| JOHN H. KENNETT, JR. | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION

The Debtor filed the present Chapter 13 petition on April 28, 2005, the day before a scheduled foreclosure sale of certain parcels of rental real estate conducted by Mr. John H. Kennett, Jr. as Substitute Trustee of a deed of trust granted by the Debtor and his wife. The Trustee's sale was conducted the next day and the property was sold to White Homes and Land

1

LLC, the secured party which requested that the sale be conducted.  Mr. Kennett immediately prepared, executed and delivered a deed to White's managing member, Mr. William A. White, in accordance with the terms of the sale and the deed was recorded by mid-afternoon.  Mr. Kennett claims that he had no notice or actual knowledge that the bankruptcy petition has been filed.  On the other hand, the Debtor has introduced evidence in the form of testimony from his counsel's paralegal, Ms. Sandra Lewis, that she talked with Mr. Kennett on the telephone twice the day before the foreclosure sale, once in the morning to tell him that Mr. Wilson was in the office preparing to file a petition and then again in the afternoon to tell him that a petition had been filed and she had a docket number.  She further stated that Mr. Kennett asked her if Mrs. Wilson had filed and when told that she had not, said that it (i.e., the bankruptcy filing) didn't matter.  Mr. Kennett later took the stand and testified that there had been only one call from Mr. Delafield's office prior to the foreclosure sale and the woman who called only asked him his office fax number and then said thank you after being supplied the number and hung up.  The issues before the Court are (1) whether the automatic stay arose in the first place as the property being foreclosed upon was owned by the Debtor and his wife as tenants by the entireties with right of survivorship rather than as the individual property of Mr. Wilson; (2) if the automatic stay did arise with respect to this property, should it nevertheless be "annulled" pursuant to 11 U.S.C. § 362(d) so as to permit ratification after the fact of the foreclosure sale conducted after filing of Wilson's bankruptcy petition: and (3) if the stay should not be "annulled", should relief from it for cause nevertheless be granted to the creditor.

Mr. Kennett asserts a number of reasons in his Motion why, he believes, the stay was not violated and why, even if it was, relief from the stay ought to be granted.  The asserted

grounds are as follows:

1. The debt secured by the deed of trust was not a consumer debt but was made for investment.

2. The property was owned as tenants by the entireties and the Debtor's wife did not file jointly with him so the automatic stay never arose as to such property.

3. The amount of the debt far exceeds the value of the property.

4. There is no feasible way the Debtor can propose a confirmable plan to pay the amount of the indebtedness constituting a lien against the property.

5. The Debtor has a history of filing Chapter 13 plans to hold his creditors at bay and then spending the rents collected from the properties without making payments to the secured party, thereby allegedly defrauding his creditors.

6. The Debtor filed this new case without anything other than the two page petition and allegedly for the sole purpose of continuing to collect rents from the property without accounting for same, more succinctly, that he filed his petition in bad faith.

## FINDINGS OF FACT

The property which is the subject matter of the current dispute was acquired by the Debtor, Larry W. Wilson, Jr.[1], and his wife, Heather L. Wilson, as tenants by the entireties with right of survivorship in early 1999. In connection with their purchase of the property they executed a deed of trust dated January 5, 1999 to secure to the sellers, C. Woodson Toney and Dorothy S. Toney, the deferred balance of the purchase price in the amount of $117,000. The

---

[1] The deed is to Larry W. Wilson and Heather L. Wilson, not Larry W. Wilson, Jr., the name used in the Debtor's bankruptcy petition.

3

Deed from the Toneys to the Wilson which was made an exhibit to a pre-hearing Memorandum filed by Mr. Kennett in support of the motion for relief indicates a reported purchase price for the subject property of $130,000. The property is improved for residential purposes and several tenants reside there. The note evidencing this indebtedness, identified as Exhibit 2, calls for monthly installments of $907.10 due on the first day of each month and a 10% late charge for any payment not made by the tenth of the month. Payments are to be applied first to accrued interest with the balance to unpaid principal.

Mr. Wilson has filed previous bankruptcy cases in this court. He filed a prior Chapter 13 case jointly with his wife on December 15, 2003, case # 03-05230, which he testified he dismissed voluntarily on January 25, 2005, purportedly on the advice of counsel, after the Toneys advised him that they would consent to his selling the property. A review of the docket history for that case indicates, however, that the case was dismissed on the Chapter 13 Trustee's motion rather that at the request of the Debtors. The Trustee's Final Report for that case indicates that she received a total of $3,000 in plan payments from the Wilsons of which $1,300 was disbursed to their counsel for that case as an administrative expense of the case and the balance of $1,700 was refunded to the Wilsons, no Chapter 13 plan having ever been confirmed during the more than thirteen months such case was pending. The Wilsons had previously filed a joint Chapter 7 petition on June 19, 2003 and received a discharge in that case on September 16, 2003.

Mr. Kennett filed his Motion for Relief on May 3, 2005. This followed by one day the filing by counsel for the Debtor of a complaint to initiate an adversary proceeding against Mr. Kennett, Mr. White and White Homes and Land, LLC to enjoin alleged violation of

4

the automatic stay by the defendants and to recover damages from them.  All of the defendants to the adversary proceeding filed answers on May 3.  An initial conference concerning the Motion and these pleadings was held on May 5.  As a result it was agreed that any rent received by tenants should be paid into the trust account of the Debtor's counsel to be held pending a hearing on the matters in dispute.  It was further agreed that all matters would be continued for a further hearing on May 23.  On that date at the appointed time all parties appeared.  Mr. Kennett argued that he was entitled as a matter of law to have the foreclosure sale affirmed because the property which he had sold at the foreclosure sale was owned as tenants by the entireties and therefore was not property of the bankruptcy estate and a foreclosure sale of such property did not violate the automatic stay.  For his part, Mr. Delafield, on behalf of the Debtor, stated that he was not intending to put on evidence of damages that day but was seeking a determination that the sale had been conducted in violation of the automatic stay and was void, a purely legal question.  During the hearing which ensued Mr. White, Mr. Wilson, Ms. Sandra Lewis, Mr. Delafield's paralegal, and Mr. Kennett all testified.

    Mr. Wilson testified that he had obtained a contract for the sale of the property for $140,000, apparently at some point after the dismissal of the second case and prior to the filing of the present case, but this transaction failed when, according to Wilson, Mr. William White, who had come into control of the Toneys' note, refused to approve it, apparently meaning the assumption of the existing debt by the prospective purchaser.  Prior to the May 23 hearing Mr. Kennett filed a Memorandum with a number of attached exhibits.  One of them is a photocopy of the assignment dated March 14, 2005 of the note from the Toneys to White Homes and Land, L.L.C., which then appointed  Mr. Kennett as substitute trustee of the deed of trust by instrument

dated April 1, 2005 and recorded in the City of Roanoke Circuit Court Clerk's Office on April 4, 2005.  The documentation filed with the Court also includes a recent payment history on the note with a starting balance on the note, purportedly "as determined in bankruptcy court", as of April 1, 2002 of $108,296.06.  This payment history reflects (i) no payments during the remainder of 2002, and (ii) payments of only $1,150 for the entire year of 2003, such amount being the aggregate of three partial payments made during such time.  The payment history in 2004 was considerably improved over this level of performance with eight monthly payments of $907.10 being recorded.  The last payment was recorded on November 3, 2004 and the only subsequent payment of any kind noted was on April 1, 2005 and it was in the amount of $170.81 with the notation "Garnished Rent".

    For reasons unclear to the Court the Debtor has failed to file a Schedule D although such failure has been brought to his attention and that of his counsel by means of a Clerk's deficiency order issued on April 29 and all other schedules were filed on May 5. Neither has he filed a proposed Chapter 13 plan.  Schedule D requires the disclosure of secured creditors, the amount of debt owed to them, the value of their collateral, and any shortfalls between the property's value and the amount of debt owed against it.  Although the property subject to the deed of trust is comprised of four parcels, the parties refer to it as two separate properties, 819 Campbell Avenue and 832 Patterson Avenue. Mr. White also referred in his testimony, however, to two vacant lots and the deed of trust note identified as Exhibit 2 states that it is secured by 826, 828 and 832 Patterson Avenue and 819 Campbell Avenue. Mr. White testified that in his opinion the two vacant lots are worth between $5,500 and $6,500 each and that 832 Patterson Avenue was worth probably about $60,000 to $65,000, which value is somewhat depressed by

the fact that some tenants are living there without paying rent and legal action might be necessary to remove them.  Although a transcript of the hearing has not been prepared, it does not appear that he gave an estimate of value of the Campbell Avenue property, although he described it as an "emergency" situation.   The Debtor represented through his counsel at the May 23rd hearing that he would voluntarily surrender the Campbell Avenue property.   The Debtor lists the value of his interest in the Campbell Avenue property as being $40,400 and the Patterson Avenue property as $74,400, both subject to a secured debt in the amount of $146,000.  Without the benefit of Schedule D, it is not clear whether the Debtor's values reported in Schedule A reflect the values of the fee simple ownership of the properties in question or the Debtor's 50% ownership of them together with his wife, Heather, their joint ownership being 100% of course.

In Schedule I to his petition the Debtor reports monthly income from his work as a "handyman" of $1,600 and rental income from real property of $2,700.  Coupled with his wife's reported "take home pay" of $1,267.50 yields an income sufficient to make a proposed Chapter 13 plan payment of $850 per month after providing for a home mortgage payment of $1,125, a payment of $680 to "William White For 832 Patterson Avenue", and $225 to First Tennessee for an unidentified installment payment obligation.  First Tennessee has filed a proof of claim, however, in the filing date amount of $44,157.89 upon a debt in the original amount of $26,000 as of the date of its origin, December 4, 2000, secured by property owned by Mr. and Mrs. Wilson at 510 Ninth Street, in the City of Roanoke.  The proof of claim contains a copy of the $26,000 note and it provides for monthly payment of $499.14.  Accordingly, the $225 amount reported in Debtor's Schedule J is less than half the actual regular payment due the

creditor. The indicated levels of the Debtor's income seem to be belied, however, by the Debtor's reported self-employment income of $5,000 for 2005 year-to-date and $8,000 rental income for the same period. The Statement of Financial Affairs indicates that it was signed by the Debtor on May 5. The petition was filed on April 28 so the year-to-date income figures should include all but two days of income for the first four months of 2005. The significance of this is that the debtor's actual income during this year on a monthly basis is approximately $1,250 per month rather than $1,600 for his income as handyman and approximately $2,000 per month rather than $2,700 per month for rental income. The difference between the Debtor's actual total monthly income of $3,250 per month and the reported income of $4,300 per month, a result of $1,050, considerably exceeds the projected plan payment of $850. The year-to-date figures for 2005 appear to be a continuation of his income for 2004 when he earned $13,453 for work done and received $25,900 rental income, a monthly average not materially different from his 2005 income. The 2003 income amounts reported by the Debtor, $14,110 for self-employment income and $31,545 for rental income, appear to suggest that the Debtor's finances are gradually deteriorating rather than improving. While he reports in his current petition no real estate taxes as being delinquent on his various properties, although more than $8,000 of unpaid real estate taxes to the City of Roanoke was noted in the Chapter 13 trustee's Final Report in the prior Chapter 13 case filed by the Wilsons and dismissed by the Court on January 25 of this year, Schedule F indicates unpaid gas, electricity and telephone utility charges as being due, although as to which properties is not indicated. The only loan payments aggregating more than $600 to any creditor in the ninety days preceding bankruptcy reported by the Debtor in response to question # 3 of the Statement of Financial Affairs are payments to American General Finance,

Inc. totaling $750 over the period February - April, 2005. This supports Mr. Kennett's contention that the Debtor had not been making the loan payments due to the Toneys and White from the rent obtained from his tenants over the recent past preceding the date of the foreclosure sale. The Debtor testified that he had not been making these payments recently due to uncertainty as to whom the payments were due. The written assignment of the note from the Toneys to White, however, previously mentioned, is dated March 14, 2005 and the Debtor reports as of the filing date having cash on hand of $20, a bank account at Wachovia valued at $100 and uncollected rent from various tenants in the amount of $2,000. Therefore, there is no evidence of rents having been put in an escrow account pending clarification of entitlement to the mortgage payment. Rather, the schedules reflect that Mr. Wilson simply has not had the resources necessary to make the payments for which he was obligated on these properties.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A motion for relief from the automatic stay arising incident to a bankruptcy filing is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(G).

The automatic stay issued pursuant to 11 U.S.C. § 362(a) upon the filing of a bankruptcy case has been recognized as a *fundamental* protection provided to a bankruptcy debtor. *In re Boswell,* 206 B.R. 421, 423 (Bankr. W.D. Va. 1997). Contrary to the assertion repeatedly voiced by Mr. Kennett, the automatic stay does not simply protect against actions against property of the bankruptcy estate. 11 U.S.C. § 362(a)(4) enjoins actions to enforce any lien against property of the estate, but the following subsection, (a)(5), enjoins "any act to . . .

enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case". The Debtor's property interest in property which he owns with his spouse as tenants by the entireties is certainly property of the Debtor within the meaning of this statute and has been so held. *See Sovran Bank, N.A., v. Anderson*, 743 F.2d 223 (4th Cir. 1984). Mr. Kennett has failed to cite any authority to the contrary. The case he does cite does not support the contention made by him on this specific issue. The case he does cite[2] does not support the contention made by him on this specific issue, but simply held that relief from the stay should be granted to permit a joint creditor to take necessary action to safeguard its rights against property owned as tenants by the entireties. Accordingly, the contention that the automatic stay did not apply to the Debtor's interest in tenancy by the entireties real property is rejected.

This Court has previously held that acts in violation of the automatic stay are void. *Ward v. IRS (In re Ward),* 261 B.R. 889, 893 (Bankr. W.D. Va. 2001). This is the weight of authority on the point but there is a substantial line of authority to the contrary that such an act is "voidable" rather than "void'. 3 **Collier on Bankruptcy** ¶ 362.11[1] at p. 362-119 (15thr ed. rev.). In either event, however, it is well recognized that a bankruptcy court has the power to give viability to an act otherwise void or voidable by virtue of its authority to "annul" the automatic stay, which has been interpreted to mean retroactive relief from the stay. *See In re Wiencko*, 99 Fed. Appx. 466, 469, 2004 U.S. App. LEXIS 10174, \*\*5 (4th Cir. 2004) (unpublished); *Khozai v. Resolution Trust Corporation,* 177 B.R. 524, 526 (E.D. Va. 1995); *In re Boswell*, 206 B.R. 421, 423 (Bankr. W.D. Va. 1997); *In re Scott,* 260 B.R. 375, 381 (Bankr.

---

[2] *Chippenham Hospital v. Bondurant*, 706 F.2d 1057 (4th Cir. 1983).

D.S.C. 2001): **Collier on Bankruptcy,** *supra.*.  Such relief is almost always limited, however, to actions taken in good faith and without actual knowledge or notice of the bankruptcy case filing.  *See In re Boswell, supra,* 206 B.R. at 423, fn. 4.  While the Court does not make a finding of fact as to the question whether or not Mr. Kennett was advised of the Wilson bankruptcy case filing and nevertheless proceeded to conduct the foreclosure sale in the mistaken belief that the automatic stay did not arise because the property was owned as tenants by the entireties and only Mr. Wilson had filed, it does conclude that the burden of proof in such matters to establish lack of knowledge rests upon the party seeking to obtain the extraordinary relief of having the stay annulled to give validity to an act otherwise void.  The Court concludes that such burden of proof has not been borne by Mr. Kennett, the party seeking such a determination.  Accordingly, the Court concludes that the circumstances of this case do not establish good ground for annulling the automatic stay and validating the foreclosure sale conducted on April 29.

      The final issue is to determine whether sufficient grounds for relief from the automatic stay have been produced to permit a new foreclosure sale.  Much of the questioning by Mr. Kennett of Mr. White at the hearing and the latter's testimony concerned the allegedly deplorable condition of the improvements and Mr. Wilson's lack of attention to them.  Mr. Delafield  has protested the presentation of such evidence and its consideration by the Court on the basis that such was not set forth as a ground for relief in the Motion Mr. Kennett filed and therefore the Debtor did not have adequate notice of what he was obliged to answer.  This is reasonable, especially considering that each attorney took the position at the May 23rd hearing that his client was entitled to judgment as a matter of law.  The Court concludes, however, that

11

on the disputed facts and admissions from the Debtor, the creditor and therefore Mr. Kennett as the substitute trustee under the deed of trust are entitled to relief from the automatic stay for "cause" pursuant to 11 U.S.C. § 362(d)(1).  The Motion for Relief did claim that the Debtor was collecting the rents from the property and using them for purposes other than making payments on the secured debts.  Although the payment history attached to Mr. Kennett's pre-hearing Memorandum was not formally made a part of the record at the hearing, Mr. Delafield conceded that payments were delinquent on the debt at the time of filing and has not made any suggestion that the payment history reflected in such exhibit is incomplete.[3] In short, the Court has not been presented with any contention that the Wilsons had made other payments not credited in the loan history statement.  Such history indicates that in the six months leading up to the foreclosure the Wilsons had made only one regular loan payment, which was in the first of those months (November 2004) and had not built up any escrow account or reserve from collected rent to apply to the delinquent payments.  The information contained in the Statement of Financial Affairs indicates that the Debtor was not earning enough money from his work as "handyman" or collecting enough rent from his rental properties to meet his secured debt obligations.  Such information demonstrates to the contrary that in the four months leading up to his bankruptcy filing the Debtor was not earning at a rate necessary to make a Chapter 13 payment and his monthly mortgage payments or in fact either of them.  Further, Mr. Wilson admitted on the stand that he did not have the personal expertise to make some of the admittedly needed repairs to the property and the financial information makes clear that he did have the

---

[3] By relying in part on the payment history contained in such exhibit, the Court does not mean to imply that it endorses the practice of adding back of accrued but unpaid interest and late payment charges into the principal loan balance and then computing interest upon such balance.

12

financial means to hire others to do so. It is quite apparent to the Court that the Debtor simply does not have the financial resources necessary to pay the debt which he has incurred and that to delay the foreclosure of the deed of trust is simply to put off the inevitable. When cause for granting relief from the stay has been proven or appears from the evidence, the burden is upon the debtor to establish adequate protection of the secured creditor's interest. 11 U.S.C. § 362(g)(2); *In re Mazzeo,* 167 F.3d 139 (2nd Cir. 1999); B. Russell, **Bankruptcy Evidence Manual, 2005 Edition,** § 301.46 at p. 741 (Thompson West). The Court concludes that the undisputed evidence establishes affirmatively that the creditor will not have adequate protection if the automatic stay is continued. Accordingly, the Court will grant the Motion for Relief for cause and will permit Mr. Kennett to conduct a new foreclosure sale. An order to such effect will be entered contemporaneously with the signing of this decision.

       This 29th day of June, 2005.

*/s/ William F. Stone, Jr.*
UNITED STATES BANKRUPTCY JUDGE